**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TIFFANY ROPER and HEIDI EMMERLING, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>RISE INTERACTIVE MEDIA & ANALYTICS, LLC,<br><br>               Defendant. | Case No. 1:23-cv-1836<br><br>Judge: Hon. Lindsay Jenkins |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

On October 18, 2024, Plaintiffs Tiffany Roper and Heidi Emmerling ("Plaintiffs") moved for preliminary approval of the proposed class action settlement and for certification of the Settlement Class ("PA Mot."). ECF Nos. 50-51. The Court preliminarily approved the settlement on October 21, 2024, ECF No. 52. ("Prelim. Approval Order")

Plaintiffs now move for final approval of the settlement and for certification of the Settlement Class. As set forth in the Declaration of Caroline Barazesh Regarding Settlement Administration ("Barazesh Declaration" or "Barazesh Decl.") attached hereto as Exhibit 1, the Claims Administrator, Analytics LLC, implemented an extensive Court-approved Notice Program with direct notice of settlement delivered by via email and U.S. first-class mail to the Class.

I.      **INTRODUCTION**

The present case arises out of a data security incident (the "Data Incident") that allegedly compromised the sensitive personal information ("SPI") of approximately 54,509[1] people who were customers of Edgepark Medical Supplies, a third-party who gave that SPI to Defendant. Plaintiff Tiffany Roper, individually and on behalf of the Settlement Class (as defined below), filed suit against Defendant on March 23, 2023. (ECF No. 1).  Plaintiff Tiffany Emmerling joined Plaintiff Roper's action on June 22, 2023 (ECF No. 14).

As discussed in detail in Plaintiff's Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 51), the settlement is fair, reasonable, and adequate, and represents an excellent result for the Settlement Class. Through mediation and extensive negotiations, the Parties reached an agreement that provides for significant monetary and equitable relief for the Settlement Class. The settlement includes a $427,500 settlement fund which will be distributed to Plaintiffs and members of the Settlement Class both to reimburse out-of-pocket costs incurred as a result of the Data Incident as well as on a pro rata basis to everyone who filed a claim.

If approved, the settlement will resolve all claims arising out of the Data Incident and will provide Class Members with the precise relief that this action was filed to obtain. Accordingly, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Settlement Agreement, Plaintiffs respectfully request that the Court enter an order granting final approval of the settlement and finally certifying the Settlement Class.

---

[1] The final list sent by Defendant to the claims administrator, after processing through the National Change of Address database, resulted in a final total of 54,374 Settlement Class members.

## II.     SUMMARY OF THE LITIGATION

Plaintiffs allege that, in February 2023, Defendant was the target of a data security incident in which an unauthorized user gained access to Defendant's computer systems and which resulted in an unauthorized access of sensitive personal information ("SPI").[2] Plaintiffs allege that this SPI included "patients' names, email addresses, phone numbers, provider information, diagnoses, expected delivery dates and health insurance information."[3]

In the wake of the Data Incident, Plaintiff Roper filed this Action on March 23, 2023. ECF No. 1. The Parties fully briefed two motions to dismiss (ECF Nos. 16, 21, 22, 23, 24, 28, 31, 32, 36, and 37) before ultimately deciding to mediate.

Recognizing the risks of protracted litigation, and after exchanging considerable discovery and engaging in mediation with an experienced mediator, Bruce Friedman, Esq. of JAMS, the Parties eventually reached an agreement on a settlement (the "Settlement") in principle as a result of the mediation on July 22, 2004.[4]

The Settlement Agreement was finalized and signed by the Parties on October 17, 2024, and Plaintiffs moved for preliminary approval October 18, 2024. ECF Nos. 50-51.

## III.     THE TERMS OF THE SETTLEMENT AGREEMENT

### A.  Settlement Class

The Settlement provides for a nationwide Settlement Class as described in the operative complaint:

---

[2] *See* Third Amended Class Action Complaint ("3AC") at ¶ 2.
[3] *Id.* at ¶ 3.
[4] *See* Settlement Agreement ("SA"), ECF No. 51-1 at ¶ 12.

"Settlement Class" means all individual U.S. residents to whom Edgepark sent notice of the Data Incident. Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuit, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Incident or who pleads nolo contendere to any such charge. Defendant represents that the Settlement Class contains approximately 54,509 individuals.

ECF No. 51-1 at § 1.28.

## B. Settlement Benefits

The monetary relief provided for by the Settlement Agreement was negotiated by the Parties to be as simple as possible both for the convenience of the class as well as to conserve the resources of the settlement fund. In short, members of the Settlement Class may seek reimbursement for out-of-pocket expenses (both losses and consequential expenses) incurred as a direct result of the Data Incident. ECF No. 51-1 at § 2.4. Additionally, all claimants will receive a *pro rata* share of the settlement fund following out-of-pocket claims, attorneys' fees and expenses, claims administration costs, and Plaintiff's service award. While the initial estimate of this share was $50.00 in the motion for preliminary approval (ECF No. 51 at 4), the claims administrator now expects the *pro rata* share to be $303.20.[5]

## C. The Notice and Claims Process

### a. Notice

As part of the granting of the preliminary approval motion, the Court appointed Analytics, LLC ("Analytics") as the Claims Administrator. Analytics has complied and will

---

[5] *See* Barazesh Decl. at ¶ 19.

4

continue to comply with the notice provision proposed and the system of notice, which was approved and has been implemented.

The Notice Program includes providing notice to the Settlement Class via direct mail and/or email to the members of the Settlement Class's addresses.[6]  The Notice Program was highly successful and has reached approximately 98.26% of the Class via direct mail notice.[7]

The Claims Administrator also established a dedicated settlement website ("Settlement Website") and maintained and updated the website throughout the claim period, with the forms of Summary Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, copies of the motion for final approval of the Class Settlement Agreement, and the motion for Attorneys' Fees and Expenses Award and Service Award.[8] The Claims Administrator has also maintained a toll-free help line with an interactive voice response, FAQs, and an option to speak to a live operator to provide Settlement Class Members with additional information about the Settlement.[9]

### b. Claims, Objections, and Requests for Exclusion

The Notice Program advised Settlement Class members of their rights to object or opt out of the settlement and directed Settlement Class members to the Settlement Website for more information. The Long Form Notice provided instructions for Settlement Class members to exclude themselves from the Settlement Class. The Long Form Notice also provided instructions for Settlement Class Members to object to the

---

[6] *Id.* at ¶¶ 4-9, 11-13.
[7] *Id.* at ¶ 14.
[8] *Id.* at ¶ 10.
[9] *Id.*

5

settlement and/or to Settlement Class Counsel's application for attorneys' fees, costs and expenses. The claims process was structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and then decide whether they would like to opt-out or object.

The exclusion and objection deadline was January 20, 2025. ECF No. 54. To date, not a single objection has been filed and there have been only two requests for exclusion.[10] There have been only 16 members of the Settlement Class who have sought out-of-pocket reimbursement, though only three who have submitted documentation (for a total of $465.40), and 802 members of the Settlement Class seeking a *pro rata* share of the Settlement Fund.[11]

### c. Attorneys' Fees, Costs, and Service Awards

The Settlement Agreement calls for a reasonable service award to each Plaintiff in the amount of $5,000.[12] The Service Award is meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, producing documents in conjunction with the mediation, remaining available for consultation throughout the mediation and settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions.[13]

After agreeing to the terms of the settlement on behalf of the Class, counsel for Plaintiffs negotiated their fees separate from the benefit to Class Members, in the amount not to exceed 33.33% of the Settlement Fund **after administration costs.**

---

[10] *See* Barazesh Decl. at ¶¶ 15-16.
[11] *Id.* at ¶ 17.
[12] S.A. at § 7.1.2
[13] *See* Plaintiff's Unopposed Motion for Attorneys' Fees, Expenses, and Service Award ("Fee Pet.") at 9-10.

Class Counsel previously submitted a separate motion seeking attorneys' fees, costs, and service award on January 6, 2025, seeking $131,612.83 in attorneys' fees and $10,092.47 in expenses (ECF No. 57).

## ARGUMENT

### A. Certification of the Settlement Class is Appropriate

This Court provisionally certified the Settlement Class for settlement purposes in its Preliminary Approval Order finding that the Settlement Class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). *See* ECF No. 48; Fed. R. Civ. P. 23(a)(1)-(4), (b)(3); MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Since that time, there have been no developments that would alter this conclusion. Based on the facts and arguments stated herein and for the reasons set forth in Plaintiff's Preliminary Approval Motion, the Settlement Class should now be finally certified for settlement purposes.

Where (as in this case) final certification is sought under Rule 23(b)(3), the plaintiff(s) must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re TikTok, Inc., Consumer*

*Privacy Litigation*, MDL No. 3948, 2021 WL 4478403, *5 (N.D. Ill. Sept. 30, 2021) (slip copy) (internal citations omitted).

Because a court evaluating certification of a settled class action is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* "[A] class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Courts regularly certify class actions for settlement. In fact, courts have certified similar data breach cases—on a national basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019). *See, also, e.g., In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). The Court should similarly certify the Settlement Class as it meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

**B.  The Class Meets the Requirements of Rule 23(a)**

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1. The Class is so numerous that joinder of all of them is impracticable

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See Savanna Group, Inc. v. Trynex, Inc.,* 2013 WL 66181, *4 (N.D. Ill. 2013). Here, there are approximately 114,482 Settlement Class Members. Joinder, therefore, is clearly impracticable, and the Settlement Class thus easily satisfies Rule 23's numerosity requirement. *See, e.g., Karpilovsky*, 2018 WL 3108884, at *6 (class of 40 or more is sufficient); *McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (same).

### 2. Questions of law and fact are common to the members of the Classes

The second prerequisite to class certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*,

131 S. Ct. 2541, 2545 (2011) (citation omitted). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

Here, commonality is readily satisfied because the circumstances of each particular class member retain a common core of factual or legal issues with the rest of the Settlement Class. Plaintiff's claims center on whether Defendant failed to adequately safeguard the SPI of Plaintiffs and other Settlement Class Members. For example, issues common to all class and subclass members include:

- Whether Defendant owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding their SPI

- Whether Defendant knew or should have known that they may not have employed reasonable measures to keep the SPI of Plaintiffs and Settlement Class Members secure; and

- Whether Defendant violated the law by failing to promptly notify Plaintiffs and members of the Settlement Class that their PII had been compromised.

These common questions, and others alleged by Plaintiffs in his operative complaint, are central to the causes of action brought here and can be addressed on a class-wide basis, because they all tie back to the same common nucleus of operative fact—the Data Incident and Defendant's data protection measures. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement"); *see also In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"). Thus, Plaintiffs have met the commonality requirement of Rule 23.

10

**3. Plaintiff's claims are typical of the claims of the members of the classes they represent.**

"Rule 23(a) further requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Spates v. Roadrunner Transporation Sys., Inc.*, 2016 WL 7426134, at *2 (N.D. Ill. 2016). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and…[the] claims are based on the same legal theory." *Id.* (quoting *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006)). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, the typicality requirement is satisfied for the same reasons that Plaintiffs' claims meet the commonality requirement. Specifically, Plaintiffs' claims are typical of those of other Settlement Class Members because they arise from the Data Incident. They are also based on the same legal theory, *i.e.*, that Defendant had a legal duty to protect Plaintiffs and Settlement Class Members' SPI. Because there is a "sufficient nexus" between the Plaintiffs claims and the claims of Settlement Class Members, the typicality requirement is satisfied.

**4. The Adequacy Requirement is Satisfied**

The test for evaluating adequacy of representation under Rule 23(a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class," and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *In re TikTok, Inc. Consumer Privacy Litigation*, 2021 WL 4478403, *7 (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla.

1992)); *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 598 (7th Cir. 1993). Here, the Plaintiffs and Settlement Class Counsel meet the test of adequacy.

First, there is no conflict between Plaintiffs and the Settlement Class Members. Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. Plaintiffs were harmed in the same way as all Settlement Class Members when Defendant failed to adequately secure their SPI. Plaintiffs and all Settlement Class Members seek relief for injuries arising out of the same Data Incident. In light of this common event and injury, the named Plaintiffs have every incentive to vigorously pursue the class claims and have prosecuted this case for the benefit of all Settlement Class Members.

Further, Settlement Class Counsel is qualified to represent the class. He has extensive experience in data privacy and consumer class actions. *See* Exhibit 2, Wolf Haldenstein Adler Freeman & Herz Firm Resume. The results obtained by this settlement confirm counsel's adequacy.

### 5. The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Questions of Fact and Law Predominate

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and

whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Catholic Healthcare W. v. U.S. Foodservice Inc.*, 729 F.3d 108, 118 (2d Cir.2013)) (internal quotation marks omitted). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–124 (3d ed. 2005)).

In this case, the key predominating questions are whether Defendans had a duty to exercise reasonable care in safeguarding, securing, and protecting the SPI of Plaintiffs and the Settlement Class, and whether Defendant breached that duty. The common questions that arise from Defendant's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2

(D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class). Thus, this case meets the requirement of predominance.

**b. A Class Action is the Superior Method of Resolving These Claims**

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of a more than a hundred thousand claims in one action is far superior to litigation via individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment in the instant case, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity

14

of trials conducted at enormous expense to both the judiciary and the litigants. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating millions of individual data breach cases arising out of the *same* Data Incidents.

The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Court should finally certify the Settlement Class for settlement purposes.

### c. Plaintiff's Counsel Should Be Appointed Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed herein, proposed Settlement Class Counsel has extensive experience prosecuting similar class actions and other complex litigation. The proposed Settlement Class Counsel has diligently investigated and efficiently prosecuted the claims in this matter, dedicated substantial resources toward the endeavor, and has successfully and fairly negotiated the settlement of this matter to the benefit of Plaintiffs and the Settlement Class. *Id.*, ¶¶ 26-57.

### d. The Settlement Should Be Finally Approved as Fair, Reasonable and Adequate

15

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) (citing *In re AT & T Mobility Wireless Data Services Sales Lit'n*, 270 F.R.D. at 346 (quoting *Armstrong*, 616 F.3d at 314)). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id*. "If the court preliminarily approves the settlement, the class members are notified." *Id*.

On August 30, 2024, this Court preliminarily found the settlement to be fair, adequate, and reasonable. ECF No. 62. This Court ordered that the notice process commence and set a final fairness hearing for January 29, 2025. *Id.*

Where, as here, the proposed settlement would bind class members, it may only be finally approved after the fairness hearing and a finding that the settlement is fair, reasonable, and adequate, based on the following factors:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As explained below, consideration of the relevant factors supports finally approving the settlement.

### i. The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 313 ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes

17

the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. At the outset of their investigation, Settlement Class Counsel conducted extensive research regarding the Plaintiff's claims, Defendant, and the Data Incident. The culmination of that process led to an agreement by the Parties to mediate the case with respected mediator Bruce Friedman. Even after reaching an agreement on the central terms, the Parties spent almost two months fully negotiating the finer points of the Settlement Agreement. As such, and considering counsel's extensive experience in data breach litigation, the Parties were able to enter into settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims.

In addition, the adequacy of representation requirement is satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009). Here, as discussed *supra*, the Plaintiff's claims are aligned with the claims of the other Settlement Class Members. They thus have every incentive to vigorously pursue the claims of the class, as they have done to date by remaining actively involved in this matter since its inception, participating in the pre-suit litigation process, and involving themselves in the settlement process. Further, Plaintiffs retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g.*, *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *8 (N.D. Ill. June 25, 2018).

18

ii.    **The Settlement was Negotiated at Arms-Length by Vigorous Advocates, and There Has Been No Fraud or Collusion**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank,* No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), report and recommendation adopted, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011) ("the involvement of an experienced mediator is a further protection for the class, preventing potential collusion"); *Wright v. Nationstar Mortgage LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (similar).[14]

Here, the settlement resulted from good faith, arms'-length settlement  negotiations over many months, including a mediation session with respected mediator Bruce Friedman.  At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length. After the conclusion of mediation, the Parties reached an agreement on the central terms and spent weeks finalizing all settlement terms and documents. *Id.*, ¶ 34.

Accordingly, it is clear that the Parties negotiated their settlement at arm's-length, and absent any fraud or collusion. *See, e.g.*, *Steele*, 2011 WL 13266350, at *4 (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by an experienced mediator); *Wright,* 2016 WL 4505169, at * 11 (finding no

---

[14] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

19

evidence of fraud or collusion where the parties participated in two prior mediations and engaged in lengthy discovery).  Thus, this factor weighs in favor of preliminary approval.

### iii.    The Settlement Provides Substantial Relief for the Classes

The settlement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."  *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted).  Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs."  *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. at 347.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969).  It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A*., 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that

the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

Here, the settlement provides for monetary relief to all claimants, both to cover out-of-pocket costs, as well as direct monetary relief resolving potential claims. The Settlement provides for a non-reversionary Settlement Fund of $427,500.00 for Plaintiffs and Settlement Class Members to receive compensation in a very simple claims system which allows both for reimbursement of out-of-pocket losses as well as a *pro rata* share of the Settlement Fund, estimated at $303.20 per person.

The settlement benefits are therefore fair, adequate, and reasonable compared to the range of possible recovery.

### 1. The costs, risks, and delay of trial and appeal favor final approval of the settlement

The value achieved through the Settlement Agreement here is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of this case, they also understand that Defendant would assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion for class certification in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, due to the quickly evolving nature of case law pertaining to data protection, it is likely

that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and class members can have a chance at relief.

Plaintiffs dispute the defenses Defendant is likely to assert, but it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

## 2. The proposed award of attorneys' fees is fair and reasonable

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

Cash Awards will be distributed based upon information provided by claimants on their respective claim forms. Class Members have the opportunity to receive some compensation with a simple attestation, and greater compensation by providing documentary evidence. *Id.* For these reasons, the means by which the relief will be distributed is fair, efficient, and effective.

## 3. There are no additional agreements required to be identified under Rule 23(e)(3)

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed settlement is

22

adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiff's counsel will seek an award of attorneys' fees and costs in the amount of $152,919.33 — a small fraction of the value of the total settlement. In fact, the fees and costs requested are one-third of the Settlement Fund after claims administration costs. This amount falls well within the range of other approved class settlements, including privacy class settlements.

### iv. The Settlement Agreement Treats Class Members Equitable Relative to Each Other

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members are eligible to make a claim for up to $250 in reimbursements for Out-of-Pocket Losses and will receive a *pro rata* share of the Settlement Fund regardless of whether or not they incurred Out-of-Pocket losses.

Direct Notice was sent to all Settlement Class Members, and all Settlement Class Members have the opportunity to object to or exclude themselves from the settlement. While Plaintiffs will each be seeking a $5,000 award for their services on behalf of the class, this award is less than 2.4% of the total Settlement Fund, and thus does not create an improper motivation to settle or give rise to undue inequities across the class.

### v. The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Favor Approval of the Settlement

The Court should also give great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation. *See In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties'

23

experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

Here, Settlement Class Counsel have substantial experience prosecuting large, complex consumer class actions. After informal discovery, independent factual investigation and mediation before a well-qualified and experienced mediator, Settlement Class Counsel is confident that the settlement provides significant relief to the Settlement Class and is in their best interests. *Id*., ¶ 25-34. Settlement Class Counsel whole-heartedly endorse the settlement. Additionally, the reaction of the Settlement Class has been positive. To date, there are no objections, no opt-outs, and 802 Claim Forms have been filed. This is "strong circumstantial evidence" that the settlement is fair, reasonable, and adequate and deserves final approval. *In re Mexico Money Transfer Litig.,* 164 F.Supp. 2d 1002, 1021 (N.D. Ill. 2000); *see also Hall v. Bank of America, N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (noting where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness").

### IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval to the settlement and certify the Settlement Class.

Dated: February 25, 2025                  Respectfully submitted,

*s/   Carl V. Malmstrom*
Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel:  (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com